# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| **CHRISTIE LYNN PETREE**, | ) |
|  | ) |
| **Plaintiff**, | ) |
|  | ) |
| v. | ) **CASE No.:**_____ |
|  | ) |
| **MISSOURI DEPARTMENT**, **OF CORRECTIONS** | ) ) |
|  | ) **JURY TRIAL DEMANDED** |
|  | ) |
| **WOMEN'S EASTERN RECEPTION DIAGNOSTIC AND CORRECTIONAL CENTER ("WERDCC")**, | ) ) ) |
|  | ) |
|  | ) |
| **ANGELA MESMER**, (Warden of WERDCC) in her individual and official capacity, | ) ) ) |
|  | ) |
| **JOHN/JANE DOE**, in her individual and official capacity as an employee for the Missouri Department of Corrections, | ) ) ) ) |
|  | ) |
| **CORRECTIONS OFFICER CUTT**, in her individual and official capacity as a correctional officer for the Missouri Department of Corrections, | ) ) ) ) |
|  | ) |
| **CORRECTIONS OFFICER BROWN**, in her individual and official capacity as a correctional officer for the Missouri Department of Corrections, | ) ) ) ) |
|  | ) |
| **CORRECTIONS OFFICER CAGLE**, in her individual and official capacity as a correctional officer for the Missouri Department of Corrections, | ) ) ) ) |
|  | ) |
| **CORRECTIONS OFFICER SAPP**, in his individual and official capacity as a | ) ) |

Case 2:24-cv-04218-BCW    Document 4    Filed 12/16/24    Page 1 of 30

correctional officer for the Missouri
Department of Corrections,

**CORRECTIONS OFFICER SUTTON**,
in her individual and official capacity as a
correctional officer for the Missouri
Department of Corrections,

**CORRECTIONS OFFICER LEPLEY**,
in her individual and official capacity as a
correctional officer for the Missouri
Department of Corrections,

**DEFENDANT FITZGERALD**,
in her individual and official capacity as a
correctional officer for the Missouri
Department of Corrections,

      **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

# COMPLAINT FOR DAMAGES

Plaintiff Christie Petree, ("Plaintiff") states the following Complaint against Missouri Department of Corrections (Defendant "MODOC"), and Defendant Women's Eastern Reception Diagnostic and Correctional Center (Defendant "WERDCC"), Defendant Warden of WERDCC Angela Mesmer (Defendant "Warden Mesmer"), , Correctional Officer Cutt (Defendant "Cutt"), Correctional Officer Brown (Defendant "Brown"), Correctional Officer Cagle (Defendant "Cagle"), Correctional Officer Sapp (Defendant "Sapp"), Correctional Officer Sutton (Defendant "Sutton") Correctional Officer Lepley (Defendant "Lepley"), Defendant Jane Doe (Defendant "Doe"), Defendant Tammy Fitzgerald (Defendant "Fitzgerald")(collectively "Defendants"):

## I. NATURE OF THE CASE

1. This is a civil rights action pursuant to **42 U.S.C. § 1983** for violations of Plaintiff's constitutional rights under the **First, Fourth, Eighth, and Fourteenth Amendments** to

the United States Constitution, arising from Defendants' actions while Plaintiff was incarcerated. Additionally, Plaintiff brings claims for **medical negligence** and **negligent infliction of emotional distress** under the **Missouri Tort Claims Act (MTCA)**.

## II.    PARTIES

2. **Plaintiff Christie Lynn Petree** is a resident and citizen of the State of Missouri.

3. **Defendant Missouri Department of Corrections** – The Missouri Department of Corrections (MDOC) is a political subdivision of the State of Missouri and is a legal entity responsible for the operation of its facilities, including the **Women's Eastern Reception Diagnostic and Correctional Center** (WERDCC). At all relevant times, MDOC was acting under the color of state law.

4. **Defendant Women's Eastern Reception Diagnostic and Correctional Center** – Women's Eastern Reception Diagnostic and Correctional Center (WERDCC) is a state-run correctional facility located at **101 E. US Highway 54, Vandalia, MO 63382**. This is the institution where Plaintiff was confined at all relevant times and can be served at this address.

5. **Defendant Warden Angela Mesmer** – Defendant **Angela Mesmer** was, at all times relevant to this action, the Warden of WERDCC. In her capacity as Warden, she was responsible for the operation and oversight of the facility. Defendant Mesmer is sued in both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

6. **Defendant Correctional Officer Cutt** – Defendant **Cutt** is a correctional officer at WERDCC who, at all times relevant to this Complaint, was acting under the color of state law. Defendant Cutt is sued in both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

7. **Defendant Correctional Officer Cagle** – Defendant **Cagle** is a correctional officer at WERDCC who is alleged to have prohibited or frustrated Plaintiff's ability to file grievances, seek medical attention, or pursue due process. Defendant Cagle is sued in

both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

8. **Defendant Correctional Officer Lepley** – Defendant **Lepley** is a correctional officer at WERDCC who is alleged to have prohibited or frustrated Plaintiff's ability to file a grievance or seek medical attention. Defendant Lepley is sued in both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

9. **Defendant Correctional Officer Sapp** – Defendant **Sapp** is a correctional officer at WERDCC who is alleged to have prohibited or frustrated Plaintiff's ability to file a grievance or seek medical attention. Defendant Sapp is sued in both his official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

10. **Defendant Correctional Officer Sutton** – Defendant **Sutton** is a correctional officer at WERDCC who is alleged to have prohibited or frustrated Plaintiff's ability to file a grievance, seek medical attention, or pursue due process. Defendant Sutton is sued in both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

11. **Defendant Correctional Officer Brown** – Defendant **Brown** is a correctional officer at WERDCC who is alleged to have prohibited or frustrated Plaintiff's ability to file a grievance, seek medical attention, or pursue due process. Defendant Brown is sued in both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

12. **Defendant Jane Doe** – Defendant **Doe** is a correctional officer and/or the person who was running the cosmetology unit at WERDCC at the time of the complained-of conduct. Defendant Doe conspired with others to deprive Plaintiff of her constitutional rights and enlisted inmate Defendant **Fitzgerald** to carry out the assault. Defendant Doe is sued in both her official and individual capacities and can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

13. **Defendant Inmate Tammy Fitzgerald** – Defendant **Fitzgerald** is an inmate at WERDCC (DOC# 1072007) who was ordered by **Defendant Doe** and other correctional staff to remove Plaintiff's eyelashes using improper methods and equipment. Defendant Fitzgerald was compelled by correctional officers to carry out the assault, and in doing so, acted under color of state law. She is sued in both her official and individual capacities. She can be served at **101 E. US Highway 54, Vandalia, MO 63382**.

---

# III.   JURISDICTION AND VENUE

14. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution, and is brought pursuant to **42 U.S.C. §§ 1983 and 1988**.

## *Federal Jurisdiction:*

15. Jurisdiction over this matter is conferred upon this Court by **28 U.S.C. § 1331** (federal question jurisdiction) and by the doctrine of **supplemental jurisdiction** under **28 U.S.C. § 1367**.

## *Missouri Tort Claims Act (MTCA) Jurisdiction:*

16. This Court also has jurisdiction over the claims arising under the **Missouri Tort Claims Act** (MTCA), which provides that the **Missouri Department of Corrections** and its employees, when acting in their official capacities, may be subject to civil suit for negligence and other tortious acts that cause harm to individuals, including violations of Plaintiff's rights as alleged in this Complaint. Plaintiff has complied with the requirements of the MTCA, and this Court has jurisdiction over the claims brought under the MTCA, pursuant to **§ 537.600 R.S.Mo.** and the Missouri state law governing such claims.

## *Venue:*

17. Venue is proper in this Court pursuant to **28 U.S.C. § 1391(b)(2)**, because the events or omissions giving rise to Plaintiff's claims occurred in Vandalia,

Missouri, and the Defendants reside in or can be found in this district. Additionally, there is a federal question at issue.

## IV.   STATEMENT OF FACTS

### *Plaintiff's Background and Incarceration*

18. Plaintiff has attached an Affidavit in support of this pleading which is attached as **EXHIBIT A** and incorporated by reference as if stated fully herein verbatim.

19. The Defendants, including the correctional officers and medical staff, and/or other staff were acting within the scope of their employment with the Missouri Department of Corrections and are subject to suit under the Missouri Tort Claims Act, Mo. Rev. Stat. § 537.600, for failing to ensure proper medical treatment and safety standards in their performance of medical procedures.

20. At all relevant times, Plaintiff was incarcerated at Women's Eastern Reception Diagnostic and Correctional Center (WERDCC) in Vandalia, Missouri, serving a 120-day sentence.

21. Plaintiff was subjected to various medical procedures and services while in the custody of Defendants at WERDCC.

### *Plaintiff's Medical Condition and Treatment*

22. Plaintiff had medical-grade eyelash extensions that were originally applied for cosmetic reasons.

23. On March 16, 2024, while Plaintiff was in line to receive a tablet, she was stopped by Defendant Correctional Officer Cutt. Defendant Cutt instructed Plaintiff to close her eyes so she could examine Plaintiff's eyelashes.

24. Plaintiff informed Defendant Cutt that the nurse practitioner at the facility had issued a 90-day Individualized Offender Care Plan (IOC), which recommended

that Plaintiff's eyelashes not be removed due to the lack of proper supplies and tools in the facility.

25. Despite this, Defendant Cutt told Plaintiff to "lose [her] fucking attitude" and instructed her to retrieve the IOC.

26. Plaintiff complied and presented the IOC, which Defendant Cutt reviewed. Defendant Cutt, after reading the IOC, asked, "When are they taking them off?" and Plaintiff explained that they would not be removed due to the lack of appropriate supplies, as the IOC stated.

27. After this exchange, Plaintiff returned to her cell, but as she was walking away, Defendant Cutt allegedly stated, "I want them out and when I want something done IT HAPPENS!" and added, "I will go to any extent to make sure the lashes are removed from her [Plaintiff's] face."

28. This exchange showed that Defendant Cutt was intent on removing Plaintiff's eyelashes, even in direct contravention of the medical recommendations outlined in the IOC.

29. A true and accurate copy of the IOC in question is attached to this pleading as **EXHIBIT B** and incorporated herein by reference as if set forth in its entirety herein verbatim.

### *The Forced Eyelash Removal Procedure*

30. On the following Monday, Plaintiff was called to the rotunda to see Defendant Officer Lepley, who then directed Plaintiff to the cosmetology wing for the removal of her eyelashes.

31. Plaintiff was subjected to a procedure where Defendant Doe, an unqualified prison staff member or cosmetology unit supervisor, was tasked with removing Plaintiff's eyelashes. Defendant Doe lacked the necessary training, tools, or equipment to perform the procedure safely.

32. Defendant Doe applied chemicals to Plaintiff's eyes, which caused immediate pain and burning sensations. The chemical agents did not remove the eyelashes as intended.

33. Defendant Doe, in frustration, resorted to using tweezers to remove Plaintiff's eyelashes one by one. This caused Plaintiff extreme pain, and Defendant Doe's rough handling led to Plaintiff's screams and visible distress.

34. When Defendant Doe became frustrated, she ordered Inmate Tammy Fitzgerald, an unqualified inmate (DOC#: 1072007), to continue removing Plaintiff's eyelashes. Inmate Fitzgerald complied, despite having no medical training, and caused additional injury to Plaintiff by continuing the procedure with the tweezers.

35. Defendants, including correctional officers and medical staff at Women's Eastern Reception Diagnostic and Correctional Center, failed to provide Plaintiff with proper medical care.

36. The procedure to remove Plaintiff's eyelashes was carried out by unqualified personnel, including an inmate, without the proper supplies or training.

37. Defendants were negligent in failing to ensure that the proper procedures were followed, causing Plaintiff physical harm and emotional distress. This failure to provide proper medical care is the basis for Plaintiff's state law negligence claim under the Missouri Tort Claims Act (MTCA).

38. During this procedure, Plaintiff suffered serious physical injuries, including:

    i. Permanent damage to her vision caused by the chemical agents and the physical trauma from the eyelash removal.

    ii. Missing skin from her eyelids, resulting in scars.

    iii. Pain and swelling, which lasted for two days.

### *Plaintiff's Attempts to File Grievances and Seek Medical Attention*

39. After the procedure, Plaintiff filed a grievance regarding the assault and the inadequate medical care she received. However, Defendants obstructed her attempts to report the incident.

40. When Plaintiff sought to file an official grievance, she was only provided with a pencil by Defendant Cagle and was told that the grievance could not be filed.

41. Plaintiff in an attempt to keep a record of this, and to get the word to someone who might help, wrote her father and her uncle.

42. A true and accurate copy of a letter written by Plaintiff to her father and uncle while imprisoned, it attached to this pleading as **EXHIBIT C**, and incorporated herein verbatim.

43. Plaintiff informed Defendant Officer Sutton of the incident and her intention to file a grievance. Defendant Sutton advised Plaintiff that grievance forms were often disregarded and suggested Plaintiff "let it go."

44. Plaintiff's grievance was ignored by Defendant Sutton, and Plaintiff was denied the opportunity to file an official complaint or statement.

45. Plaintiff eventually attempted to submit an Inmate Request for Remedy (IRR) form on April 2, 2024, but was told that the form would not be accepted because she was being transferred to another facility (Chillicothe Correctional Center).

46. Plaintiff's IRR statement was not properly filed at WERDCC, and when Plaintiff arrived at Chillicothe Correctional Center, she was told by her new caseworker, Ms. Richards, that the grievance had not been filed properly.

47. Plaintiff eventually received a copy of her IRR from WERDCC, but it had been marked with "HU6," indicating her previous housing unit, and was accompanied by a note stating that CCC (Chillicothe Correctional Center) took it to Plaintiff's caseworker. Plaintiff was led to believe that her grievance was effectively ignored or discarded.

48. A true and copy of the Grievance is filed as **EXHIBIT D** and is incorporated by reference.

49. A true and accurate copy of the IRR is attached to this Pleading as **EXHIBIT E.**

50. A true and accurate copy of the Grievance Appeal is attached to this pleading as **EXHIBIT F.**

### *Defendants' Deliberate Indifference and Knowledge of the Risk*

51. Defendants, including Warden Angela Mesmer , Correctional Officers, and medical staff, were aware of the risks associated with allowing unqualified personnel and inmates to perform medical procedures. Despite being aware of these risks, Defendants failed to intervene and take appropriate actions to ensure Plaintiff's safety and well-being.

52. The failure to provide appropriate medical care and ensure that the procedure was performed by qualified staff constitutes deliberate indifference to Plaintiff's serious medical needs. A reasonable prison official would have known that performing this procedure with unqualified individuals and improper supplies posed an excessive risk of harm.

### *Plaintiff's Ongoing Injuries*

53. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered permanent physical injury, including permanent damage to her vision, scarring, and psychological trauma. Plaintiff's injuries continue to affect her daily life and well-being.

54. Plaintiff has experienced significant emotional distress, as the trauma of the incident and subsequent denial of proper medical treatment has caused her severe anxiety, depression, and a sense of humiliation and violation.

---

## V.   CLAIMS SUMMARY AND DEFENDANTS' INVOLVEMENT

55. <u>Federal Claims</u>:

    a. **Count I** – <u>**42 U.S.C. § 1983**</u> **Eighth Amendment Violation**  (Cruel and Unusual Punishment):

        i.   **I**nadequate medical care for the removal of Plaintiff's eyelashes by unqualified personnel and without proper training or equipment.

    **ii.** All Defendants are responsible for the deliberate indifference to Plaintiff's serious medical needs by failing to ensure proper medical care and by subjecting her to an invasive and painful procedure performed by unqualified individuals.

**b. Count II – <u>42 U.S.C. § 1983</u> Fourteenth Amendment Violation** (Due Process):

    **i.** Denial of medical care, and harm caused by inadequate training and oversight in violation of Plaintiff's **Fourteenth Amendment right to substantive due process**.

    **ii.** All Defendants interfered with depriving Plaintiff of proper medical procedures

**c. Count III – <u>42 U.S.C. § 1983</u> First and Fourteenth Amendment Violations**:

    **i.** Denial of access to a meaningful grievance system, hindering Plaintiff's ability to petition the government for redress and causing further harm.

    **ii. Defendants: Cutt, Sutton, Brown, and other correctional officers** involved in the grievance process violated Plaintiff's right to due process in that they did one or more of the following which interfered with Plaintiff's ability to:

        **1.** file grievances,

        **2.** report the incident, and

        **3.** seek redress,

        **4.** violating her right to due process, as well as depriving her of proper medical procedures.

**d. Count IV – <u>42 U.S.C. § 1983</u> Monell Liability** (Failure to Train and Supervise) – Claim against **Missouri Department of Corrections** and **Warden Angela Mesmer** for:

    i.   failure to train, supervise, and provide necessary resources and medical care, leading to constitutional violations.

    ii.  Failure to have a meaningful grievance filing process, or to have sufficient policy imposed or enforced to safeguard plaintiff's constitutional rights and makes such unlawful conduct almost certain to befell inmates.

    iii. Failure to have adequate oversight of the removal of cosmetics such as this, and the use of chemicals, and the use of excessive force, or medical negligence.

    iv. Failure to correct a culture of grievance suppression by the prison staff, and the frustration of inmates efforts to file same.

    v.  Defendants have history of negligent and/or conduct that violated inmates constitutional rights and this amounts to a pattern of conduct.

    vi. **Against Defendants Missouri Department of Corrections, WERDCC, and Warden**

56. <u>**State Claims**</u>

    a. **Count V – Negligence** – Failure to Provide Adequate Medical Care

        i.  Against Defendants Missouri Department of Corrections, Women's Eastern Reception Diagnostic and Correctional Center, and Individual Defendants in their Official Capacities.

    b. **Count VI – Medical Negligence**

        1. Improper removal of Plaintiff's eyelashes by unqualified personnel, use of harmful chemicals, and failure to follow proper medical procedures.

        2. This claim is brought under the Missouri Tort Claims Act, <u>Mo. Rev. Stat. §§ 537.600</u> et seq., for negligence, medical negligence, and other torts arising from the actions and omissions of Defendants who were acting in the course and scope of their employment and under color of state law.

3. **Defendants: All individual defendants involved in the procedure, including Doe and Fitzgerald**

c. **Count VII - Battery**
    i. The intentional physical assault involved in the eyelash removal procedure and the pain caused by Defendants' actions.
    ii. **Defendants: Doe and Fitzgerald**

d. **Count VIII – Alternative Count of Intentional Infliction of Emotional Distress** – Defendants' conduct was outrageous and extreme, leading to severe emotional distress for Plaintiff.

e. **Count IX– Alternative Count of Negligent Infliction of Emotional Distress** failure to ensure appropriate medical treatment and the use of unqualified personnel allows recovery for **emotional distress** caused by the negligence of Defendants in failing to follow basic medical protocols and providing inadequate care.
    i. **Defendants: All individual defendants involved**

f. **Count X – Claim under the Missouri Tort Claims Act (MTCA)** – State tort claims, including medical negligence, assault and battery, and emotional distress.
    i. **Defendants: Missouri Department of Corrections, Warden Mesmer, and individual officers involved**

---

# VI.  CLAIMS FOR RELIEF

## COUNT I
### Eighth and Fourteenth Amendment
### Violation of Plaintiff's Constitutional Rights Under 42 U.S.C. § 1983

57. Plaintiff incorporated herein by reference paragraphs 1 through 56 as if stated fully herein verbatim

58. At all times relevant to this pleading Defendants were acting under color state law during the course of their employment with Missouri Department of Corrections.

*Failure to Provide Adequate Medical Care*

59. Plaintiff, Christie Lynn Petree, asserts that the Defendants violated her **Eighth Amendment** rights by failing to provide adequate medical care during the procedure to remove her eyelashes. The removal of Plaintiff's medical-grade eyelashes was carried out by unqualified personnel and without proper medical supplies or training, leading to unnecessary pain, physical injury, and prolonged harm, in violation of Plaintiff's constitutional rights.

### *Inadequate training and supplies*:

60. Defendant Jane Doe, the individual who administered the procedure, was not qualified or trained to perform such a delicate and specialized medical task. Furthermore, the facility lacked the appropriate supplies and equipment necessary for the procedure. The use of chemical agents and tweezers by unqualified personnel resulted in severe injuries to Plaintiff's eyes, including permanent damage to her vision.

### *Negligence in medical care*:

61. The failure to ensure the presence of adequately trained medical personnel and appropriate medical supplies constitutes negligence. Defendants were aware, or should have been aware, that the procedure was being carried out by unqualified individuals, yet failed to take reasonable steps to ensure Plaintiff received appropriate medical care. This constitutes deliberate indifference to Plaintiff's serious medical needs, a violation of her **Eighth Amendment** rights under the standard of "cruel and unusual punishment."

### *Severe injury caused by inadequate care*:

62. Plaintiff suffered immediate and long-term injuries as a result of the improper procedure. These include permanent vision problems, physical scarring, and damage to the skin and tissues around her eyes. The injuries were exacerbated by the Defendants' failure to provide the necessary medical treatment, oversight, and care to prevent harm.

63. The right to be free from cruel and unusual punishment, which includes the right to adequate medical care, was clearly established prior to the conduct in question.

64. The U.S. Supreme Court has held that prison officials are constitutionally required to provide adequate medical care to prisoners under the **Eighth Amendment**.[1]

65. It is clearly established that failure to provide necessary medical care, particularly when the failure results in severe harm, violates a prisoner's constitutional rights.

66. the failure to provide adequate medical care can constitute "deliberate indifference" if a prison official is aware of a serious medical need but deliberately fails to address it.

67. In this case, Defendants knew that the procedure to remove Plaintiff's eyelashes was being carried out by unqualified individuals with improper tools and materials but failed to act to prevent the harm. This conduct meets the standard of "deliberate indifference" and violates Plaintiff's **Eighth Amendment** rights.

68. A reasonable correctional officer, given the clearly established constitutional right to adequate medical care, would have known at the time that allowing an unqualified inmate and staff member to perform such a medical procedure would violate Plaintiff's **Eighth Amendment** rights.

69. In fact, the conduct of Defendants in this case, including failing to intervene and ensure the procedure was conducted properly, shows that Defendants acted with **deliberate indifference** to Plaintiff's serious medical needs.

70. The **deliberate indifference** standard is met when the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825 (1994). It is sufficient that Defendants knew of the risk to Plaintiff's health and chose not to act, particularly where Defendants knew the procedure was being carried out by unqualified personnel.

71. *Farmer* establishes that the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. Here, Defendants, by allowing untrained individuals to conduct the procedure, acted with the requisite mental state of deliberate indifference.

72. Defendants' failure to ensure the safety and proper medical care of Plaintiff reflects a conscious disregard of the known risks, showing their **deliberate indifference** to Plaintiff's well-being.

---

[1] Specifically, in *Estelle v. Gamble*, 429 U.S. 97 (1976), the Court ruled that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." This decision clearly established that failure to provide necessary medical care, particularly when the failure results in severe harm, violates a prisoner's constitutional rights.

# COUNT II
### *Fourteenth Amendment: Denial of Medical Treatment (Due Process)*

73. Plaintiff incorporated herein by reference paragraphs 1 through 72 as if stated fully herein verbatim

74. Plaintiff asserts that Defendants' conduct also violated her **Fourteenth Amendment** rights under the **Due Process Clause** by denying her access to appropriate medical treatment, which was necessary for her well-being and safety.

### *Failure to intervene in serious medical need*:

75. Defendants, including Defendant Warden Mesmer  and Defendant Officer Cutt, were made aware of the serious medical needs Plaintiff faced as a result of the improper procedure. Yet, Defendants failed to intervene and provide appropriate care or remove Plaintiff from the situation. This constitutes a denial of medical treatment and deprives Plaintiff of her rights to bodily integrity and procedural due process.

### *Failure to ensure medical procedures met constitutional standards*:

76. Defendants' failure to ensure that medical procedures were carried out by properly trained individuals and with appropriate equipment and supplies constitutes a violation of Plaintiff's constitutional rights. By failing to address these issues, Defendants allowed the violation of Plaintiff's right to receive adequate medical care while in their custody.

### *Clearly Established Right*:

77. The right to be free from the denial of medical treatment was clearly established under the **Fourteenth Amendment** at the time of the incident.

78. The **Fourteenth Amendment** guarantees due process, which includes the right to adequate medical care. In ***Farmer v. Brennan***, 511 U.S. 825 (1994), the Supreme Court held that the **Eighth Amendment** governs claims for failure to provide

adequate medical care, but the **Fourteenth Amendment** applies when a detainee is not yet convicted, as is the case with Plaintiff. However, both amendments use the same standard: deliberate indifference to serious medical needs.

79. In ***Ramos v. Lamm***, 639 F.2d 559 (10th Cir. 1980), the court held that an inmate's due process rights were violated when correctional officials failed to provide proper medical care.

80. The *Ramos* court confirmed that, under the **Fourteenth Amendment**, individuals in state custody, whether pretrial detainees or convicted prisoners, are entitled to constitutionally adequate medical treatment. The failure to provide such care to Plaintiff in this case, where unqualified individuals performed a procedure that resulted in serious harm, violates Plaintiff's **Fourteenth Amendment** rights.

### *Causal Link to Injuries*

81. Any reasonable prison employee would have known of these clearly established rights at the time of the complained of conduct.

82. As a direct and proximate result of the Defendants' failure to provide adequate medical care, Plaintiff suffered severe and permanent injuries. The use of unqualified personnel, improper tools, and chemical agents directly caused:
    i.   Permanent damage to Plaintiff's vision
    ii.  Permanent scarring on Plaintiff's eyelids
    iii. Pain, swelling, and physical distress lasting for several days
    iv.  Ongoing psychological trauma from the assault and medical negligence

83. The deliberate indifference to Plaintiff's serious medical needs, as outlined above, constitutes violations of her **Eighth** and **Fourteenth Amendment** rights, and Plaintiff is entitled to damages for the harm caused by Defendants' actions.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief:

    **1.**   Award Compensatory Damages; and

2. Award punitive damages against the Defendants in an amount sufficient to punish their misconduct and deter future violations of constitutional rights; and

3. Award nominal damages for the violation of Mr. Puckett's constitutional rights; and

4. Award reasonable attorney's fees and costs under **42 U.S.C. § 1988**; and

5. Grant such other and further relief as the Court deems just and proper.

---

# COUNT III
### Violations of the First and Fourteenth Amendments - 42 U.S.C. § 1983
### Denial of Due Process (Failure to Provide a Meaningful Grievance Process)

84. Plaintiff incorporated herein by reference paragraphs 1 through 83 as if stated fully herein verbatim

85. The **Fourteenth Amendment** guarantees that no state shall deprive any person of life, liberty, or property without due process of law. In the context of prison grievances, prisoners have a constitutionally protected right to **file grievances** and to have those grievances considered by the prison system. *Massey v. Helman*, 259 F.3d 641 (7th Cir. 2001). A denial of this right, especially when it involves complaints about the use of force or inadequate medical care, constitutes a violation of the Fourteenth Amendment.

*Failure to Provide a Grievance Process*:

86. Defendants, including **Defendants Cutt, Lepley, Sutton, Brown, and Mesmer**, obstructed Plaintiff's right to file a grievance regarding the forced removal of her eyelashes. Specifically:

   a. **Defendant Cutt** obstructed Plaintiff's attempt to file a grievance by providing only a pencil, which could not be used for a formal grievance submission.

   b. **Defendant Sutton** discouraged Plaintiff from filing a grievance, dismissing the importance of Plaintiff's complaint and stating that it would not be taken seriously.

   c. **Defendant Brown** misled Plaintiff by telling her that grievances filed prior to her transfer would be discarded and would not be addressed.

87. Plaintiff was further obstructed in her grievance process when **Defendant Brown** refused to file the Inmate Request for Remedy (IRR) and told Plaintiff that nothing would be done because she was being transferred.

*Deliberate Obstruction of Grievance Process*:

88. The conduct of these Defendants demonstrates **deliberate indifference** to Plaintiff's right to seek redress for her constitutional violations. Instead of facilitating a meaningful grievance process, Defendants **actively obstructed** Plaintiff's attempts to seek remedy for the assault and inadequate medical care she suffered.

89. Denying Plaintiff meaningful access to grievance filings violated Plaintiff's First Amendment Right to Free Speech, and to Petition and Access the Courts, which is a right that is clearly established and known to all people, including objectively regarding reasonable prison employees.

90. Defendants' actions in denying Plaintiff access to an effective grievance process, including withholding forms and failing to investigate Plaintiff's claims, violated her rights under the **Fourteenth Amendment** to access meaningful due process.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief in an amount currently unknown but believed to be in excess of seventy-five thousand dollars ($75,000), for:

1. Award Compensatory Damages; and
2. Award punitive damages against the Defendants in an amount sufficient to punish their misconduct and deter future violations of constitutional rights; and
3. Award nominal damages for the violation of Mr. Puckett's constitutional rights; and
4. Award reasonable attorney's fees and costs under **42 U.S.C. § 1988**; and
5. Grant such other and further relief as the Court deems just and proper.

## COUNT IV
### Monell Liability
**(Against Defendant Missouri Department of Corrections and Defendant Angela Mesmer in her Official Capacity)**

91. Plaintiff realleges and incorporates paragraphs 1 through 90 as if stated fully herein verbatim

92. At all relevant times, Defendant Missouri Department of Corrections and Defendant Warden Angela Mesmer , in their official capacities, were responsible for establishing, enforcing, and maintaining policies, customs, and practices at Women's Eastern Reception Diagnostic and Correctional Center (WERDCC), including policies and practices related to medical care, inmate health, and staff training.

93. The Missouri Department of Corrections and Defendant Warden Angela Mesmer , in their official capacities, maintained and implemented the following policies, customs, and practices that led to the violation of Plaintiff's constitutional rights:
    a. **Failure to ensure that medical procedures were performed by qualified personnel:** The Department of Corrections had a custom of allowing medical tasks to be carried out by unqualified or inadequately trained personnel, including untrained inmates (such as Defendant Fitzgerald), without proper supervision or oversight. This failure resulted in the unlawful and improper removal of Plaintiff's medical-grade eyelashes, causing permanent physical harm.
    b. **Failure to provide adequate medical supplies and training:** There was a policy or custom of failing to provide the necessary medical supplies, equipment, and training for medical procedures, including the removal of eyelashes. This led to the use of inappropriate chemicals and improper techniques, causing injury to Plaintiff's eyes and vision.
    c. **Failure to supervise medical procedures:** The Missouri Department of Corrections had a custom of insufficiently supervising medical tasks conducted within its facilities, including tasks that could affect an inmate's health and well-being, such as the removal of Plaintiff's eyelashes. This lack of supervision allowed untrained personnel to make critical decisions about medical procedures, resulting in the harm Plaintiff experienced.
    d. **Failure to provide adequate grievance mechanisms:** The Department of Corrections had a practice of obstructing and discouraging inmates from filing formal grievances related to constitutional violations, medical malpractice, or inadequate care. Plaintiff's attempts to file grievances regarding the improper removal of her eyelashes were met with resistance,

including the failure to accept grievance forms and the denial of access to appropriate grievance procedures.

94. Defendant Missouri Department of Corrections and Defendant Warden Angela Mesmer , in their official capacities, were deliberately indifferent to the serious medical needs of inmates at WERDCC, including Plaintiff, by failing to implement reasonable policies and procedures to ensure that medical procedures were conducted safely and by qualified personnel.

95. As a direct and proximate cause of the policies, customs, and practices described above, Plaintiff suffered severe physical and emotional harm, including permanent vision impairment, physical disfigurement, and ongoing psychological distress, as a result of the unconstitutional medical care provided by untrained personnel.

96. Defendant Missouri Department of Corrections and Defendant Warden Angela Mesmer , in their official capacities, acted with deliberate indifference to the health and safety of Plaintiff, violating her Eighth Amendment right to be free from cruel and unusual punishment (including the right to adequate medical care) and her Fourteenth Amendment right to due process, including the right to be free from unconstitutional treatment.

97. Defendant Missouri Department of Corrections and Defendant Warden Angela Mesmer  acted in a manner that was deliberately indifferent to Plaintiff's serious medical needs, knowing or recklessly disregarding the risk of harm to Plaintiff's health and safety. A reasonable official in their position would have known that the actions of unqualified personnel performing medical procedures without proper training and equipment would result in harm to Plaintiff.

98. As a result of the unconstitutional conduct of the Missouri Department of Corrections and Warden Angela Mesmer , Plaintiff is entitled to compensatory damages, including damages for physical pain and suffering, emotional distress, and permanent injury, as well as punitive damages due to the deliberate indifference shown by the Defendants.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief:

1. Award Compensatory Damages; and
2. Award punitive damages against the Defendants in an amount sufficient to punish their misconduct and deter future violations of constitutional rights; and

3. Award nominal damages for the violation of Mr. Puckett's constitutional rights; and

4. Award reasonable attorney's fees and costs under **42 U.S.C. § 1988**; and

5. Grant such other and further relief as the Court deems just and proper.

# COUNT V
## Negligence
## **Failure to Provide Adequate Medical Care**
### (Against All defendants involved in the procedure, including Doe and Fitzgerald)

99. Plaintiff incorporates paragraphs 1 through 98 as if stated fully herein verbatim

100. As a **correctional facility**, Defendants owed Plaintiff a **duty of care** to provide safe and effective medical treatment. This duty includes ensuring that medical procedures are conducted by appropriately trained personnel, with the proper equipment and under appropriate supervision.

101. Defendants breached this duty when they allowed **unqualified staff members**, including **Inmate Fitzgerald**, to perform a **medical procedure** (eyelash removal) that required professional training and medical supervision. Additionally, **Defendants Doe and Fitzgerald** failed to follow basic standards of care when performing the procedure, including applying chemicals that caused harm to Plaintiff's eyes and removing the eyelashes with tweezers in an unsafe manner.

102. The failure to ensure that Plaintiff received proper medical care caused significant harm, including:

   a. **Permanent damage to Plaintiff's vision** from the use of chemical agents.

   b. **Scarring and skin loss** from the improper technique used to remove the eyelashes.

   c. **Physical and emotional pain and suffering** due to the negligent and dangerous manner in which the procedure was carried out.

**103.** **Defendants' negligence** in providing adequate medical care, particularly by allowing unqualified staff to conduct the procedure, caused Plaintiff serious harm.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief in an amount currently unknown but believed to be in excess of seventy-five thousand dollars ($75,000), for Compensatory Damages caused by Defendants' negligence and for any other relief deemed just and proper.

# COUNT VI
## Medical Negligence
## Inadequate Training, Supervision, and Medical Supplies
### (All Defendants involved in the procedure, including Doe and Fitzgerald)

**104.** Plaintiff realleges and incorporates by reference paragraphs 1 through 103 as if stated fully herein verbatim.

**105.** Defendants, as employees of the **Missouri Department of Corrections**, had a duty to ensure that prison staff were **adequately trained** and **supervised** when performing medical procedures. This includes ensuring that **unqualified personnel** or **inmates** are not assigned to perform medical tasks.

**106.** Defendants breached their duty by:

   a. Failing to provide adequate training and supervision to **Defendant Doe**, **Inmate Fitzgerald**, and other personnel who participated in the eyelash removal procedure.

   b. Failing to provide appropriate **medical supplies** for the procedure, such as proper tools and equipment, and allowing an unsafe chemical agent to be used on Plaintiff's eyes.

**107.** Defendants' failure to ensure proper training, supervision, and medical supplies directly led to **the injuries suffered by Plaintiff**, including **chemical burns**, **damage to her vision**, and **physical trauma** from the improper removal of her eyelashes.

108. Defendants' failure to ensure that proper medical procedures were followed, and their failure to prevent unqualified personnel from performing such procedures, constitutes **medical negligence**.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief in an amount currently unknown but believed to be in excess of seventy-five thousand dollars ($75,000), for Compensatory Damages caused by Defendants' negligence and for any other damages permissible, for the harm caused by Defendants' failure to provide adequate medical training, supervision, and supplies.

---

# COUNT VII
## Battery
**(Against Missouri Department of Corrections, Women's Eastern Reception Diagnostic and Correctional Center, and Individual Defendants in their Official Capacities)**

109. Plaintiff incorporated herein by reference paragraphs 1 through 108 as if stated fully herein verbatim

110. **Plaintiff brings this claim under the Missouri Tort Claims Act, Mo. Rev. Stat. §§ 537.600 et seq.**, for negligence and failure to provide proper medical care under circumstances in which Defendants, acting in the course and scope of their employment, negligently exposed Plaintiff to serious medical harm.

111. **At all relevant times**, Defendants, including correctional officers, medical staff, and others at Women's Eastern Reception Diagnostic and Correctional Center, failed to ensure that Plaintiff's medical needs were met with reasonable care. This failure resulted in physical harm, including the improper removal of Plaintiff's eyelashes by unqualified personnel, the use of inappropriate chemical agents, and the failure to provide necessary medical care for injuries sustained.

112. **Plaintiff's injuries were the proximate result of Defendants' negligence**, and Plaintiff is entitled to recover damages for medical expenses, pain and suffering, emotional distress, and other damages sustained as a direct result of the negligence of Defendants.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief in an amount currently unknown but believed to be in excess of seventy-five thousand dollars ($75,000), for Compensatory Damages caused by Defendants' negligence and for any other damages permissible, for the harm caused by Defendants' failure to provide adequate medical training, supervision, and supplies.

---

## COUNT VIII
### ALTERNATIVE CLAIM TO COUNT IX
### Intentional Infliction of Emotional Distress (IIED)

113.    Plaintiff incorporates herein by reference paragraphs 1 through 112 as if stated fully herein verbatim

114.    Defendants, acting within the scope of their employment, engaged in conduct that was **extreme** and **outrageous**, in the following ways:

115.    Defendant Cutt's actions in ordering the removal of Plaintiff's eyelashes despite knowing that the necessary supplies and personnel were not available to do so safely.

116.    Defendant Doe's actions in applying chemicals to Plaintiff's eyes and removing her eyelashes with tweezers, causing severe pain, injury, and long-term harm, and then ordering Inmate Fitzgerald to continue the procedure.

117.    Defendant Fitzgerald's involvement in physically removing Plaintiff's eyelashes, which were medical-grade and improperly removed.

118.    The deliberate refusal of Defendants Cutt, Lepley, Cagle, Sutton, Brown, and other staff members to allow Plaintiff to file a grievance or report the assault, further exacerbating Plaintiff's distress.

119.    Defendants acted intentionally or with **reckless disregard** for Plaintiff's well-being, knowing or should have known that their actions would cause extreme emotional distress to Plaintiff.

120.    As a direct and proximate result of Defendants' outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to anxiety, fear, humiliation, anger, depression, and emotional trauma, as well as lasting psychological harm.

**121.** The actions and omissions of Defendants were the **direct cause** of Plaintiff's emotional distress, and such distress was foreseeable.

**Wherefore**, Plaintiff demands judgment against Defendants for all compensatory damages, including emotional distress, and for punitive damages in an amount to be determined by the jury, in excess of seventy-five thousand dollars ($75,000), for Compensatory Damages, but believed to be in excess of , plus costs, interest, and such other relief as the Court deems just and proper.

---

# COUNT IX
## ALTERNATIVE CLAIM TO COUNT VIII
### Negligent Infliction of Emotional Distress (NIED)

**122.** Plaintiff realleges and incorporates by reference paragraphs 1 through 121 as if stated fully herein verbatim.

**123.** Defendants, acting within the scope of their employment when the alleged negligent act occurred **negligently** caused Plaintiff to suffer emotional distress by:

**124.** Failing to ensure that the procedure for removing Plaintiff's eyelashes was conducted by properly trained personnel with the proper equipment, thereby creating an unreasonable risk of harm to Plaintiff.

**125.** Negligently allowing unqualified personnel, including Inmate Fitzgerald, to perform the procedure.

**126.** Negligently failing to provide proper medical care or appropriate oversight of the procedure.

**127.** Failing to follow established protocols or policies regarding medical care and grievance procedures, including hindering Plaintiff's ability to report or file a grievance about the assault and medical procedure.

**128.** **Causation**: As a direct and proximate result of Defendants' negligent conduct, Plaintiff suffered severe emotional distress, including anxiety, fear, depression, and trauma.

**129.** **Severe Emotional Distress**: Plaintiff's emotional distress was **severe** and not the type of distress a reasonable person could be expected to endure. Plaintiff's distress was exacerbated by Defendants' actions and omissions, which were negligent.

130.     **Foreseeability**: It was **foreseeable** that Defendants' negligent conduct would cause Plaintiff to suffer emotional distress, given the nature of the events and the medical procedure performed.

**Wherefore**, Plaintiff demands judgment against Defendants for all compensatory damages, in excess of seventy-five thousand dollars ($75,000), for Compensatory Damages including emotional distress, plus costs, interest, and such other relief as the Court deems just and proper.

---

# COUNT X
## Medical Negligence Under the Missouri Tort Claims Act (MTCA)
### (Against Missouri Department of Corrections, Women's Eastern Reception Diagnostic and Correctional Center, and Individual Defendants in their Official Capacities)

131.     Plaintiff realleges and incorporates by reference paragraphs 1 through 130 as if stated fully herein verbatim.

132.     **Plaintiff brings this claim under the Missouri Tort Claims Act, <u>Mo. Rev. Stat. §§ 537.600</u> et seq.**, for medical negligence under circumstances in which Defendants, acting in the course and scope of their employment, negligently exposed Plaintiff to serious medical harm.

133.     Pursuant to the provisions of the Missouri Tort Claims Act – Counsel for Plaintiff filed a demand for settlement on or about August 19, 2024.

134.     A true and accurate copy of the Demand Letter is attached to this Pleading as **EXHIBIT G** and incorporated herein by reference.

135.     A true and accurate copy of the fax receipt dated August 19, 2024 is attached to this pleading as **EXHIBIT H** and incorporated herein verbatim.

136.     Defendants, including the Missouri Department of Corrections, Women's Eastern Reception Diagnostic and Correctional Center, and its employees, were acting within the scope of their employment during the events described herein.

137.     **At all relevant times**, the Defendants had a duty to provide Plaintiff with appropriate medical care and to ensure that any procedures performed on Plaintiff were conducted by qualified personnel, with the proper equipment and training.

138.     **Defendants were negligent in several respects**, including but not limited to:

a. Failing to provide qualified personnel to remove Plaintiff's medical-grade eyelashes,

b. Failing to ensure the proper equipment and supplies were available to perform the procedure safely,

c. Allowing unqualified inmate Fitzgerald to participate in the removal of Plaintiff's eyelashes,

d. Failing to provide adequate post-procedure care to address Plaintiff's injuries and prevent further harm.

139. As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe physical harm, including permanent damage to her eyelashes, pain, and emotional distress. Plaintiff's injuries were caused by Defendants' failure to meet the standard of care required under the circumstances.

140. **Defendants' actions and omissions** in failing to provide proper medical care constitute a violation of Plaintiff's rights under Missouri state law, and Plaintiff is entitled to recover damages for medical expenses, pain and suffering, and other harm caused by Defendants' negligence.

141. Plaintiff further asserts that the Missouri Department of Corrections, and its employees acting in their official capacities, are liable for these actions under the **Missouri Tort Claims Act**, **Mo. Rev. Stat. §§ 537.600 et seq**.

**Wherefore**, Plaintiff, Christie L. Petree, respectfully requests that the Court grant the following relief in an amount currently unknown but believed to be in excess of seventy-five thousand dollars ($75,000), for Compensatory Damages caused by Defendants' negligence and for any other damages permissible, for the harm caused by Defendants' failure to provide adequate medical training, supervision, and supplies, for battery and duress and the other damages incurred by Plaintiff, and attorneys fees.

# VII. PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

142. **For All Claims (General Relief)**:
a. Order Defendants to provide an accounting of any and all records or documents relevant to the allegations in this Complaint;
b. Award Plaintiff pre- and post-judgment interest as allowed by law;
c. Award Plaintiff any other relief as the Court deems just and equitable.
d. For damages and attorneys fees, and any other relief deemed necessary or proper in the circumstances.

## VERIFICATION

I, Christie Lynn Petree, am the Plaintiff in the above stated matter and I certify that the facts alleged in this **Complaint for Damages** are true and accurate to the best of my knowledge and recollection.

_____
**CHRISTIE LYNN PETREE**

State of Missouri      )
                      ) ss
County of Pettis      )

On this 11 day of Oct , 2024, before me, a Notary Public in and for said State, personally appeared **Christie Lynn Petree**, known to me to be the said person who executed this **Complaint for Damages**, and acknowledges and swears that the preceding paragraphs are true and accurate to the best of her knowledge, and before me she executed the same for the purposes herein stated.

_____
Notary Public Signature

(SEAL)

My Commission Expires: 06·16·26

_____

TAMI RENO
Notary Public, Notary Seal
State of Missouri
Pettis County
Commission # 22689177
My Commision Expires 06/16/2026

Respectfully Submitted for Plaintiff by,

**PERRY LAW FIRM, LLC**

/s/ Alex Perry
Alex Perry
Missouri Bar Number: 64079
Perry Law Firm, LLC
1220 Sunset Drive
Columbia, MO 65203
Telephone: 573-777-2623
APerryLawFirm@gmail.com

**ATTORNEY FOR PLAINTIFF**